# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN VIGIL, on behalf of himself and all others similarly situated,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>GENERAL NUTRITION CORPORATION, a Pennsylvania corporation,<br><br>　　　　　　　　　　　　Defendant. | CASE NO. 15cv0079 JM(DBH)<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; GRANTING PLAINTIFF'S REQUEST FOR LEAVE TO AMEND |

　　　This order addresses Defendant General Nutrition Corporation's ("GNC's") motion to dismiss Plaintiff Ryan Vigil's second amended complaint ("SAC") pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6).  (Doc. No. 31).  The motion was fully briefed and found suitable for resolution without oral argument under Local Civil Rule 7.1.d.1.  For the reasons set forth below, the court grants GNC's motion to dismiss all claims, but also grants Plaintiff's request for leave to amend.

///

///

///

# BACKGROUND[1]

This case concerns the labeling and marketing for GNC's product Staminol, which, Plaintiff claims, is incapable of delivering the promised benefits. Following this court's granting of GNC's motion to dismiss Plaintiff's first amended complaint ("FAC"), Plaintiff filed his SAC, now the subject of the motion to dismiss under consideration. Plaintiff asserts causes of action for (1) violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200 et seq.; and (2) violation of the California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750 et seq.

The allegations of the SAC are more narrowly drawn in some respects and are as follows: GNC markets and distributes Staminol as an over-the-counter supplement for men. (Doc. No. 30, ¶ 2). The labeling and marketing for Staminol represent that it is designed to enhance male sexual performance, is scientifically formulated to provide maximum potency, and supports male vitality, sexual health, urinary flow, and prostate health. (Id.). The front panel of the Staminol package contains the following statements:

- Supports male vitality with proprietary blend including L-arginine and maca*
- Features horny goat weed and yohimbe, herbs traditionally used to support sexual health*
- Supports urinary flow and prostate health with saw palmetto*
- Formulated with premium ingredients to provide maximum potency*

---

[1] The facts in this section are drawn from the allegations in the SAC (Doc. No. 30), first amended complaint ("FAC") (Doc. No. 17), the partial copy of the Staminol package Plaintiff attached to the FAC, (Doc. No. 17, Exh. A), and the full copy of the package and the reports Plaintiff summarizes and cites in the SAC, which GNC attached to its motion, (Doc. No. 30, Exhs. A-C). Under the doctrine of incorporation by reference, discussed below, the court may consider the full product label because Plaintiff quoted part of it, and may consider the articles because Plaintiff summarizes and relies upon them and does not dispute the authenticity of the copies GNC attached to its motion. For purposes of this motion, Plaintiff's allegations are taken as true to the extent that they are well pleaded.

(Doc. No. 30-1, Exh. A).

The left side panel of the package reads:

**GNC Staminol™** is physician endorsed by Frank J. Costa, M.D., an internationally acclaimed urological surgeon, men's health expert and member of the GNC Medical Advisory Board.

*"**Staminol™** is a powerful male performance formula backed by GNC quality. This premium formula combines the best herbs with guaranteed potencies to support vitality and enhance performance. I highly recommend this product for men who are looking for a superior formula to address male performance concerns."*
*– Frank J. Costa, M.D.*

**Why Should I Use Staminol™?**
Staminol™ offers a premium formula containing a proprietary blend of key nutrients and exotic herbs to enhance male sexual performance.*

**How Can Staminol™ Benefit Me?**
Staminol™ is designed to support male vitality and sexual health.* It is scientifically formulated to provide maximum potency, as well as support healthy urinary flow and prostate health.*

**How Does Staminol™ Work?**
Staminol™ combines L-arginine, an important amino acid that supports nitric oxide production, with herbs traditionally used to support sexual health such as horny goat weed and yohimbe. Additionally, saw palmetto supports urinary health and normal prostate function.*

> \*   These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.

(Id.).

Under the heading "Supplement Facts," the opposite side panel lists thirteen ingredients:

| | |
|---|---|
| Proprietary Blend | 200 mg* |
|    L-Arginine | |
|    Epimedium Extract | |
|    Maca Root Powder (*Lepidium meyenii*) | |
|    Kola Nut (*Kola nitida*) | 175 mg* |
|    Oat Straw Stems (*Avena sativa*) | 150 mg* |
|    GABA (gamma-Aminuobutyric Acid) | 100 mg* |
|    Nettle Leaf (*Urtica dioica*) | 100 mg* |
|    Yohimbe Bark Extract (*Pausinystalia yohimbe*) | 60 mg* |
|    Horny Goat Weed (*Epimedium sagittatum*) | 20 mg* |
|    Catuaba Bark (*Erythroxylum catuaba*) | 10 mg* |

|  |  |
|---|---|
| Muira Root (*Ptychopetalum olacoides*) | 10 mg* |
| Damiana Leaf (*Turnera aphrodisiaca*) | 10 mg* |
| Saw Palmetto Berry (*Serenoa repens*) | 10 mg* |

*Daily Value not established.

(Id.). Gelatin and dicalcium phosphate are listed as "Other Ingredients." (Id.).

Plaintiff alleges that the Staminol labeling is false because various studies have shown that Staminol's primary ingredients—which he identifies as horny goat weed, maca root powder, L-arginine, catuaba bark, oat straw stems, damiana leaf, saw palmetto berry, and muira root—do not provide any of the promised health or sexual performance benefits, either when taken alone or in combination with other ingredients. (Doc. No. 30, ¶¶ 17–18). Further, he asserts, the minimal amount of remaining ingredients also cannot produce the promised effects, either when taken alone or in combination with one another. (Id. at ¶ 18). As support, he summarizes several scientific articles and information from the NYU Langone Medical Center's website.

Plaintiff's first article, Mario Dell'Agli et al., *Potent Inhibition of Human Phosphodiesterase-5 by Icariin Derivatives*, 71(9) Nat'l J. Products 1513 (2008),[2] assessed icariin and various icariin derivatives in comparison with Viagra. Preliminarily, the authors tested various plant extracts traditionally used for male potency for their ability to inhibit phosphodiesterase-5A1 ("PDE5"). Id. Medicines like sildenafil (Viagra) that are currently used for treating erectile dysfunction work by selectively inhibiting PDE5. See id. The authors found that only the extract of "Epimedii Herba," which "is the common name for the dried aerial parts of *E. brevicornum*, *E. sagittatum* Maxim., or *E. korneanum* Nakai, collected in the summer," was active against PDE5. Id. They state, "The observation that only *E. brevicornum* and its active principle [icariin] inhibited

---

[2] The article was attached to GNC's motion to dismiss, (Doc. No. 25-3, Exh. 5), and is available online at http://pubs.acs.org/doi/full/10.1021/np800049y.

- 4 -

PDE5 in a significant manner, in agreement with previous results, suggests that other plant extracts may interfere with erectile function through mechanisms other than PDE5 inhibition." Id. (footnotes omitted). The authors focused on assessing the PGE5 inhibitory potency of icariin, the active component in *E. brevicornum*, and derivatives of icariin. Id. at 1513–15. They found that icariin itself "was a good PDE5 inhibitor . . . but required improvement in order to have equivalent potency to sildenafil." Id. at 1513. One derivative tested was "80 times more potent" than icariin, id., with PGE5 inhibitory potency "almost identical to that of sildenafil," id. at 1515.

Plaintiff alleges that icariin is the active compound in horny goat weed, and, because icariin is 80 times less potent than Viagra, "consuming Horny Goat Weed is not an effective means of enhancing a man's sexual experience by alleviating the symptoms of erectile dysfunction." (Doc. No. 30 ¶ 19).

Plaintiff's second article, Byung-Cheul Shin et al., *Maca* (L. Meyenii) *for Improving Sexual Function: A Systematic Review*, 10 BMC Complementary & Alternative Med. 44 (2010),[3] evaluated clinical research on the effectiveness of maca on sexual performance. A database search revealed 88 articles that discussed maca and sexual health, of which only four met the authors' inclusion criteria. Id. at 2–3. Of those, three tested the effects of maca on men. Id. at 4. The first trial studied the effects of maca versus placebo on men with erectile dysfunction, and "showed positive effects." Id. The second trial tested different dosages of maca on healthy men compared to placebo, and reported "positive effects" on sexual desire from both dosages. Id. The third trial, which studied male cyclists, "failed to show positive effects of maca in the improvement of sexual desire," although the authors noted that it "had a very small sample size." Id. The authors conclude:

---

[3] The article was attached to GNC's motion to dismiss, (Doc. No. 25-3, Exh. 2), and is available at http://www.biomedcentral.com/1472-6882/10/44. The page numbers cited here refer to the page numbers used in the PDF download.

> The results of our systematic review provide *limited evidence for the effectiveness of maca in the improvement of sexual function*. However, the total number of trials, the total sample size, and the average methodological quality of the primary studies were *too limited to draw firm conclusions*.

Id. at 5–6 (emphasis added).

Plaintiff's third article, R. Stanislov & V. Nikolova, *Treatment of Erectile Dysfunction with Pycnogenol and L-arginine*, 29(3) J. of Sex & Marital Therapy 207 (2003),[4] "investigated the possibility of overcoming erectile dysfunction (ED) by increasing the amounts of endogenous [nitric oxide]." Id. at 207. According to the article, "[n]itric oxide (NO) is considered to be the principal mediator of penile erection," acting as both a neurotransmitter and vasodilator. Id. at 208. Oral supplementation with L-arginine is one method of achieving higher nitric oxide levels, and, according to a 1999 study, "was shown to be helpful for a limited number of men with ED. However, other studies have questioned the efficacy of L-arginine treatment." Id. (citation omitted). The present study assessed whether pycnogenol, an antioxidant that enhances nitric oxide production, was effective for treating erectile dysfunction in combination with L-arginine. See id. In the first month of the study, the 40 participants took daily doses of L-arginine aspartate. See id. at 209. In the second month, they also took a certain amount of pycnogenol, and in the third month, the amount of pycnogenol was increased. See id. The authors report that two study participants experienced normal erections using L-arginine alone in the first month, although "[t]*he improvement . . . did not reach significance over pretreatment*." Id. at 210 (emphasis added). That result was consistent with the 1999 study, in which the "limited number" of recovered participants was "*no*[*t*] *statistically significant*." Id. at 212 (emphasis added). However, 92.5% of study participants (37 out of 40) had recovered by the end of the trial when using both L-arginine and pycnogenol. See id. at 212.

---

[4] This article was attached to GNC's motion to dismiss, (Doc. No. 25-3, Exh. 6), and is available online at http://www.ncbi.nlm.nih.gov/pubmed/12851125.

Fourth, Plaintiff refers to the NYU Langone Medical Center's website. Under the heading "Impotence,"[5] the site states that oat straw, catuaba, damiana, muira, saw palmetto, and a number of other herbs "are also reputed to improve sexual function in men. . . . *However, there is as yet no real evidence that they offer any benefits.*" (Emphasis added.) Under the heading "Saw Palmetto,"[6] the site reports that "Saw palmetto oil is an accepted medical treatment for benign prostatic hyperplasia (BPH) in New Zealand and in France, Germany, Austria, Italy, Spain, and other European countries. . . . Most, thought [sic] not all, research suggests that saw palmetto can markedly improve" the typical urinary difficulties associated with BPH. However, the site also notes, "*The scientific evidence for the effectiveness of saw palmetto in treating prostate enlargement is inconsistent.*" (Emphasis added.) It elaborates that while numerous studies had shown some improvement from saw palmetto, "[a] more recent well designed, placebo-controlled trial involving 369 men found that saw palmetto even at high doses (three times the standard dose) did not improve urinary flow rate compared to placebo."

Finally, in the SAC, Plaintiff cites a new article, J. Chen et al., *Effect of Oral Administration of High-dose Nitric Oxide Donor Arginine in Men with Organic Erectile Dysfunction: Results of a Double-blind, Randomized, Placebo-controlled Study*, 83(3)269-73 BJU Int. (1999),[7] which involves another study on L'arginine. The study included 50 to 75 men with confirmed organic erectile dysfunction, who were randomized after a two-week placebo run-in period to receive L-arginine or placebo. Id. at 270. "Six weeks of L'arginine therapy was associated with no significant improvement in the objective variable assessed." Id. at 272. The study

---

[5] A  http://www.med.nyu.edu/content?ChunkIID=21720.

[6] A printout of this webpage was attached to GNC's motion, (Doc. No. 25-3, Exh. 4), and is available at http://www.med.nyu.edu/content?ChunkIID=21865.

[7] This article is attached to GNS's motion to dismiss Plaintiff's second amended class action complaint, (Doc. No. 31-2), and is available online at http://onlinelibrary.wiley.com/doi/10.1046/j.1464-410x.1999.00906.x/full.

concluded that L-arginine was effective in the improvement of sexual function in men with organic erectile dysfunction only when they suffered from abnormal nitric oxide metabolism. Id. at 272.

Thus, Plaintiff claims, although GNC represents that Staminol can enhance users' potency and sexual performance and that it supports urinary flow and prostate health, reliable scientific research reveals that many of the product's primary ingredients do not provide these benefits. (Doc. No. 30, ¶ 25). In sum, he asserts, Staminol is totally ineffective at providing the benefits GNC touts, and those representations, in turn, lead consumers to buy the product. (Id.).

In April 2014, Plaintiff read the Staminol label at a GNC store, including the representations regarding the product's sexual-health and performance benefits. (Id. at ¶ 14). He relied on the labeling, desired to enhance his sexual experience and enjoyment, believed Staminol would provide the advertised benefits, and bought a bottle for $19.99. (Id.). Plaintiff alleges that at the time he purchased the product, he had "erectile function and performance issues, and desired to enhance his sexual experience and enjoyment." (Id.). Plaintiff further alleges that he believed Staminol would help to "improve his vitality and overall sexual health by increasing his sexual stamina and his ability to garner and sustain firm and full erections." (Id.). He consumed the product pursuant to the recommended dosage at the recommended times. (Id.). He claims that he did not, however, receive any benefits from using it, "nor did the product provide a firmer erection or increase the longevity of his sexual intercourse." (Id.). Had he been aware that the representations were not true, he would not have bought the product. (Id.).

Plaintiff alleges that this court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), as he is a California resident, GNC is a Pennsylvania corporation headquartered in Pennsylvania, and the amount in controversy exceeds $5,000,000. (Id. at ¶¶ 11, 14-15). He seeks to litigate on behalf of consumers who purchased Staminol in California and states with similar

1 laws within the relevant limitations period, up until the time of class notice. (Id. at
2 ¶ 29). He seeks actual, punitive, and statutory damages; restitution and
3 disgorgement; declaratory and injunctive relief; and costs and fees. (Id. at ¶¶ A–H.)
4      On May 27, 2015, Plaintiff filed the SAC (Doc. No. 30), and on June 10,
5 2015, GNC filed a motion to dismiss Plaintiff's SAC. ("Motion") (Doc. No. 31).
6 On July 6, 2015, Plaintiff filed an opposition to GNC's motion. ("Opposition")
7 (Doc. No. 32). On July 13, 2015, GNC filed a reply. ("Reply") (Doc. No. 33).

## LEGAL STANDARDS

9      A complaint must contain "a short and plain statement of the claim showing
10 that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Complaints alleging
11 fraud must, additionally, satisfy the heightened pleading standards for fraud under
12 Rule 9(b), which requires the complaining party to "state with particularity the
13 circumstances constituting fraud." Fed. R. Civ. P. 9(b).
14      A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency
15 of the pleadings. See Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). For a
16 plaintiff to overcome a Rule 12(b)(6) motion, the complaint must contain "enough
17 facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v.
18 Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the
19 plaintiff pleads factual content that allows the court to draw the reasonable
20 inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal,
21 556 U.S. 662, 678 (2009). The court "must take all of the factual allegations in the
22 complaint as true," but is "not bound to accept as true a legal conclusion couched
23 as a factual allegation." Id. (internal quotation marks omitted). Factual pleadings
24 merely consistent with a defendant's liability are insufficient to survive a motion
25 to dismiss because they establish only that the allegations are possible rather than
26 plausible. See id. at 678–79. The court should grant 12(b)(6) relief if the complaint
27 lacks either a cognizable legal theory or facts sufficient to support a cognizable
28 legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

1990).

When addressing a Rule 12(b)(6) motion, courts generally may not consider materials outside the pleadings. See Schneider v. Cal. Dep't of Corrs., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); Jacobellis v. State Farm Fire & Cas. Co., 120 F.3d 171, 172 (9th Cir. 1997); Allarcom Pay Television Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). "The focus of any Rule 12(b)(6) dismissal . . . is the complaint." Schneider, 151 F.3d at 1197 n.1. "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

Of particular relevance here, under the doctrine of incorporation by reference, "a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotation marks omitted). "The court may treat such a document as part of the complaint, and thus may assume that its contents are true for the purposes of a motion to dismiss under Rule 12(b)(6)." Id. (internal quotation marks omitted). The court may also "consider the full texts of documents which the complaint quotes only in part." Cooper v. Pickett, 137 F.3d 626, 623 (9th Cir. 1997). Courts are "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." Gonzalez v. Planned Parenthood of Los Angeles, 759 F.3d 1112, 1115 (9th Cir. 2014) (brackets and internal quotation marks omitted).

Federal Rule of Civil Procedure 15 provides that leave to amend should be granted when justice requires it. Accordingly, when a court dismisses a complaint for failure to state a claim, "leave to amend should be granted unless the court

1 determines that the allegation of other facts consistent with the challenged pleading
2 could not possibly cure the deficiency." <u>DeSoto v. Yellow Freight Sys., Inc.</u>, 957
3 F.2d 655, 658 (9th Cir. 1992) (internal quotation marks omitted).  Amendment may
4 be denied, however, if amendment would be futile.  <u>See</u> <u>id.</u>

## DISCUSSION

6 Before analyzing the legal issues of this motion, it is essential to discuss the
7 issues raised and framed by this court in its previous order granting GNS's motion
8 to dismiss the FAC (Doc. No. 29).  As this court discussed at length in its order,
9 Plaintiff's claim is that Staminol is falsely represented to (1) increase male sexual
10 performance and vitality (whatever that means); (2) treat prostate issues (again,
11 unclear); and (3) treat urinary flow issues (less speculative).  However, Plaintiff
12 alleges that he purchased Staminol only because he "desired to enhance his sexual
13 experience and enjoyment" and for "sexual health and performance benefits."
14 (Doc. No. 30, ¶ 14).  The court noted that Plaintiff was not claiming that he
15 purchased Staminol to treat prostate or urinary "issues," and therefore, at the
16 threshold, Plaintiff was apparently trying to represent three potentially distinct
17 classes even though he did not qualify as a member of two of them.  Therefore, the
18 court granted GNC's motion to dismiss as to all claims insfoar as they concerned
19 Staminol as a product to address prostate and urinary issues, and granted Plaintiff
20 leave to amend.  (Doc. No. ¶ 29, p. 11).

21 Plaintiff, however, essentially affirms his disinclination to base his case upon
22 the theory that he purchased Staminol for the purpose of treating prostate or urinary
23 issues.  There are simply no such allegations set forth.  Therefore, the court once
24 again grants GNC's motion to dismiss as to all claims insfoar as they relate to
25 Staminol as a product to address prostate and urinary issues, without leave to
26 amend.

27 With respect to Plaintiff's UCL claim, the court found that Plaintiff had failed
28 to allege a "plausible" claim.  In addressing each of GNC's arguments, the court

1  found that: (1) Plaintiff had alleged more than a lack of substantiation (which itself
2  would not be actionable); (2) Plaintiff's claim was not barred by the "puffery"
3  defense; (3) Plaintiff had alleged sufficient facts for a non-disclosure claim to the
4  extent that he had alleged an affirmative misrepresentation; and (4) Plaintiff's claim
5  met the particularity requirement of Federal Rule of Civil Procedure 9(b).  However,
6  this court found that Plaintiff failed to allege a "plausible" claim under the UCL.
7  Because the basis for dismissing Plaintiff's UCL claims was Plaintiff's inability to
8  plead a plausible claim, in this order the court will only address whether Plaintiff
9  was able to cure this defect in his SAC.

10       When it comes to the plausibility analysis, the essential inquiry depends upon
11  a comparison of the match "between the representations at issue and the evidence
12  that allegedly debunks them."  Eckler v. Wal-Mart Stores, Inc., 2012 WL 5382218,
13  at *7 (S.D. Cal. Nov. 1., 2012).  This court found that this is where Plaintiff's
14  allegations ran aground.  First, the two articles cited by Plaintiff,[8] one concluding
15  that the icariin in one variety of horny goat weed has 80 times less PGE5 inhibitory
16  potential than Viagra, and the other concluding that L'arginine is not effective in
17  treating erectile dysfunction when taken alone, address only erectile function, and
18  "do not facially or logically suggest that these substances have no effect on other
19  aspects of male sexual performance or vitality."  (Doc. No. 29, p. 23).  Thus, the
20  court found that there was a mismatch between GNC's representations and the
21  studies provided by Plaintiff.  Second, even if that were not so, the court noted that
22  "there are still ten or eleven other ingredients that may support the advertised
23  benefits of Staminol."  (Id.).  Finally, although "it's really only scientific testing that
24  can show a supplement's claims to be truly false and/or misleading," see Eckler,
25  2012 WL 5382218, at *3 n.2, because Plaintiff had placed in issue his own use of

---

[8] In its Order, the court discussed that the other two sources cited by Plaintiff – the maca article and the NYU Langone Medical Center's website – only indicate a lack of substantiation for some of GNC's representations, not that they are provably false. (Doc No. 29, p. 23).

Staminol, without the promised performance benefits being delivered, the court stated that more specificity on this subject was required. (Id. at 24).

The court finds that Plaintiff failed to cure these deficiencies in his SAC for the following reasons. First, the only additional study cited by Plaintiff in the SAC does not address the issues raised by this court. Just as the first study on L'arginine, this one also only addresses erectile function, as it involves a study on L'arginine's effect on 50 to 75 men with erectile dysfunction. This study does not suggest that L'arginine has no effect on other aspects of male sexual performance or vitality. Second, even if it did, this study only addresses one of the thirteen ingredients contained in Staminol, which could support the advertised benefits of Staminol. Additionally and importantly, there is simply no factual basis for Plaintiff's position that "all" the benefits advertised by GNC relate to the "quality of a man's erection and therefore directly correlate to scientific studies demonstrating that the ingredients in Staminol are effective in improving the quality of an erection and/or in the treatment of [erectile dysfunction]." (Opposition, p. 2).

Finally, Plaintiff's own experience with Staminol, as detailed in the SAC, does not support the plausibility of his claim either. Although Plaintiff claims that he has never alleged that Staminol does or does not treat erectile dysfunction, nor has he alleged that he has ever sought a product to treat the same, his allegations nevertheless relate to Staminol's effect on erectile function. Plaintiff alleges that at the time he purchased the product, he had "erectile function and performance issues, and desired to enhance his sexual experience and enjoyment." (Doc. No. 30, ¶ 14). Plaintiff believed Staminol would help to "improve his vitality and overall sexual health by increasing his sexual stamina and his ability to garner and sustain firm and full erections." (Id.). He further complains that Staminol did not "provide a firmer erection or increase the longevity of his sexual intercourse." (Id.). As already discussed, there is a mismatch between GNC's representations and Plaintiff's allegations, as GNC does not advertise Staminol as a product to improve erectile

"issues," however Plaintiff would like to define them.

Because Plaintiff has failed to state a plausible claim for relief in the SAC, this court grants GNC's motion to dismiss Plaintiff's SAC[9], and grants Plaintiff's request for leave to amend as limited in this order.[10]

## CONCLUSION

GNC's motion to dismiss, (Doc. No. 32), is GRANTED. However, Plaintiff's request for leave to amend is also GRANTED. Any amended pleading must be filed within 14 days after entry of this order.

IT IS SO ORDERED.

DATED:  December 4, 2015

Hon. Jeffrey T. Miller
United States District Judge

---

[9] Plaintiff's CLRA claim fails for the same reason as discussed in this court's previous order (Doc. No. 29, pp. 24-26). Plaintiff has not reasserted his breach of warranty claim.

[10] Leave to amend is not granted with respect to Staminol's representations regarding prostate and urinary "issues."

- 14 -